U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Nov 21, 2017

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| TREE TOP INC.,<br><br>Plaintiff,<br><br>v.<br><br>STARR INDEMNITY AND LIABILITY CO.,<br><br>Defendant. | No. 1:15-CV-03155-SMJ<br><br>ORDER RULING ON PARTIES' CROSS-MOTIONS FOR PARTIAL SUMMARY JUDGMENT |

The parties filed cross-motions for summary judgment, ECF Nos. 41 and 43, on a single issue of contract interpretation: whether a statutory notice of intent to sue is a "claim" under the claims-made policy Tree Top Inc. (Tree Top) maintained with Starr Indemnity and Liability Co. (Starr) from July 2011 through July 2012.

Before Tree Top's coverage under the policy with Starr began, it received a notice of intent to sue from Earth Liberation Front (ELF). ELF filed suit in California on September 18, 2011, after the Starr policy incepted. The policy covers only "claims" that were "first made" after the coverage term commenced. The parties now dispute when the claim was "first made." Starr argues that the notice was a "Claim" under the policy, and ELF's claim was therefore "first made" in 2010, before coverage began. Tree Top asserts that the notice was not a claim and

ORDER - 1

that ELF's claim was not first made until ELF filed suit in 2011, after coverage began.

The Court heard oral argument on these motions on November 15, 2017. Having reviewed the file, the briefing and the arguments presented at the hearing, the Court is fully informed and grants Tree Top's motion for partial summary judgment and denies Starr's motion for partial summary judgment. Because the notice is not a demand within the plain meaning of that term, it is not a claim under the policy. Accordingly, ELF's claim was not first made until it filed suit against Tree Top in California state court.

**BACKGROUND**

From July 1, 2011, through July 2012, Tree Top maintained a claims-made policy with Starr. ECF No. 33 at 5. Under the policy, Starr had the "right and duty to defend any Claim against [Tree Top] covered under the policy, even if such Claim is false, fraudulent or groundless . . ." ECF No. 26-5 at 18. The policy covers claims that are "first made" and reported to Starr during the policy period. *Id.* The policy defines a "Claim" as a "written demand for monetary, non-monetary or injunctive relief made against Tree Top" or a "judicial proceeding commenced against Tree Top which is commenced by . . . service of a complaint . . . ." *Id.* at 18–19.

ORDER - 2

On June 14, 2010—before the policy with Starr incepted—Tree Top received a notice from ELF informing it that ELF intended to sue to enforce certain regulations under California's Proposition 65, Cal. Health & Safety Code 25249.7(d)(1) (hereinafter Prop. 65). ECF No. 26 at 2. Prop. 65 is a California law aimed, in part, at reducing the public's exposure to chemicals in consumer products by requiring warning labels on products. ECF No. 22 at 4. The notice contained a paragraph stating:

> Pursuant to Health and Safety Code § 25249.7(d), ELF intends to bring suit in the public interest against the entities in Exhibit "A" 60 days hereafter to correct the violation occasioned by the failure to warn all customers of the exposure to lead.

ECF No. 26 at 15. The notice did not contain any settlement offers or other demands for relief. *Id.*

On September 28, 2011—after the Starr policy incepted—ELF brought suit against several companies, including Tree Top, under Prop. 65. ECF No. 23-11. Tree Top successfully defended the claim. ECF No. 33 at 7. Tree Top submitted a claim for losses associated with ELF's suit to Starr under the claims-made policy. Starr denied coverage on May 17, 2012, based on its assessment that ELF's Prop. 65 notice was a "Claim" that was first made prior to the policy's inception. ECF No. 23-13.

## LEGAL STANDARD

Summary judgment is appropriate if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Once a party has moved for summary judgment, the opposing party must point to specific facts establishing that there is a genuine dispute for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). If the nonmoving party fails to make such a showing for any of the elements essential to its case for which it bears the burden of proof, the trial court should grant the summary judgment motion. *Id*. at 322. "When the moving party has carried its burden under Rule [56(a)], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586–87 (1986) (internal citation omitted). When considering a motion for summary judgment, the Court does not weigh the evidence or assess credibility; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255 (1986).

# DISCUSSION

## A. The Prop. 65 notice is not a "Claim" as defined under the policy.

Washington courts have not yet determined whether a statutory pre-suit notice constitutes a claim under claims-made policies.[1] In the absence of case law on point, the resolution of the instant dispute requires the Court to interpret the terms of the policy. Under Washington law, the interpretation of insurance policies is a question of law "in which the policy is construed as a whole and each clause is given force and effect." *Overton v. Consol. Ins. Co.*, 38 P.3d 322, 325 (Wash. 2002). Courts strictly construe insurance policy exclusions and policy language against the insurer. *Stuart v. Am. States Ins. Co.*, 953 P.2d 462, 464 (Wash. 1998). However, if the policy language is clear and unambiguous, the court must enforce it as written and may not create ambiguity where none exists. *Tyrrell v. Farmers Ins. Co.*, 994 P.2d 833, 836 (Wash. 2000). With these principles in mind, the Court must determine whether ELF's Prop. 65 notice was a "Claim" within the meaning of the policy.

---

[1] Starr argues that this case is analogous to *National Union Fire Insurance Co. v. Zillow, Inc.*, No. C16-146IJLR, 2017 WL 1354147 (W.D. Wash. Apr. 13, 2017). In that case, Zillow received a take-down notice alerting the company that its use of certain images violated copyright and demanding that the company remove the photos. *Id.* at *1. The court held that the notice was a "claim" under a claims-made policy with identical language to the policy here. *Id.* at *5 (holding the take-down notice is a demand for non-monetary relief). However, *Zillow* is inapposite because the take-down notice contained imperative language absent from the Prop. 65 notice in this case.

ORDER - 5

### 1. Applying the term's plain and ordinary meaning, the Prop. 65 notice does not contain an explicit demand.

Starr argues that the Prop. 65 notice was a "Claim" because it was a "written demand for money, services, non-monetary relief or injunctive relief." The principal issue, therefore, is whether ELF's Prop. 65 notice contained a "demand" for relief.

Because the policy does not define the term "demand," the Court applies its plain and ordinary meaning. *Samarzich v. Aetna Life Ins. Co. of Hartford, Conn.*, 40 P.2d 129, 131 (Wash. 1935). The Washington State Supreme Court has considered this precise issue and has concluded that a demand, however phrased, requires the assertion of a right coupled with a request for compliance therewith. *Duskin v. Carlson*, 965 P.2d 611, 615 (Wash. 1998). Although a demand may take many forms, it must request or require some action on the part of the recipient. *Id.*

The notice here does not contain an explicit demand for relief. It states that Tree Top and other recipients "were, and are, required to provide clear and reasonable warnings to all consumers of food products before exposing them to lead" and that the ELF "intends to bring suit in the public interest . . . 60 days hereafter to correct the violation . . . ." ECF No. 23-2. The notice does not request a settlement or direct Tree Top to take any affirmative action. It merely provides notice of ELF's allegations and its intent to sue.

## 2. The Prop. 65 notice does not contain an implicit demand.

Starr devotes the bulk of its briefing to the argument that the Prop. 65 notice functioned as an "implicit" demand. Specifically, Starr argues that the notice contained an implied demand for compliance with Prop. 65's labeling requirements. ECF No. 46 at 3. Starr characterizes the notice as "direct call to action" requiring Tree Top to either "include a Prop. 65 warning label on its products" or "face an imminent lawsuit." *Id.* at 5.

Starr cites a string of cases for the proposition that a notice need not actually demand relief to constitute a claim under a claims-made insurance policy. ECF No. 46 at 11–12. These cases are unpersuasive, however, because they involve substantially different policy language or communications. *See Innes v. Saint Paul Fire*, CIV.A 12-234, 2015 WL 5334580, at *7 (D.N.J. Sept. 11, 2015) (holding a letter to the insured alleging malpractice, threatening legal action, and directing the insured to submit the letter to his insurer constituted a "claim"); *Paradigm Ins. Co. v. P & C Ins. Sys., Inc.*, 747 So.2d 1040, 1041 (Fla. Dist. Ct. App. 2000) (same); *Herron v. Schutz Foss Architects*, 935 P.2d 1104, 1108 (Mont. 1997) (same). Of the cases Starr cites, only one, *Post v. St. Paul Travelers Ins. Co.*, 691 F.3d 500, 519 (3d Cir. 2012), involves a communication as entirely devoid of demand language as the notice here. *See id.* (considering whether a letter from a hospital representative blaming Post for causing the hospital to incur

ORDER - 7

"substantial . . . uninsured punitive exposure" was sufficient to put Post on notice of a future malpractice claim). Although the *Post* court held that the communication triggered the insurer's duty to defend under the relevant policy, both the facts and the issues presented to the court were distinguishable. Most importantly, the issue before the court was whether the letter Post received was sufficient to put Post on notice that he may face a claim in the future. The court therefore sought to determine whether a letter constituted *notice* of a claim, not whether the letter was *itself* a claim for relief. The dispute in this case is not whether Tree Top had notice of a potential claim, but whether the Prop. 65 notice constituted a claim as defined under the policy. Accordingly, even if Third Circuit case law were relevant to Washington contract interpretation, the holding in *Post* is not on point.

Starr's assertion that the Prop. 65 notice contained an implied demand requires Tree Top to infer more from the notice than its plain language supports. The notice specifically states that companies "were, and are" required to comply with the Prop. 65 labeling requirements and warns that the impending suit would result in "injunctive and monetary relief" if ELF prevailed. ECF No. 26 at 15. The past-tense language and threatened claim for monetary relief suggests ELF intended to bring suit for Tree Top's past violations. Accordingly, it is not at all apparent from this language that Tree Top could have avoided suit by conforming its labels to ELF's demands.

### 3. Starr's policy arguments do not override the policy's plain language.

Starr's strongest argument lies not in the language of the contract, but in the seemingly unintuitive results the policy language yields when applied in this case. In *Herron v. Schutz Foss Architects*, 935 P.2d 1104, 1108 (Mont. 1997), the Montana Supreme Court noted that "[w]here the alleged tortfeasor has reasonably been put on notice by the injured party that he intends to hold the tortfeasor responsible for his damages, it would, indeed, be anomalous to hold that a claim is, nevertheless, not made until a suit is actually filed." This same observation holds true in the instant dispute. Nonetheless, the parties are free to govern the bounds of their contractual relationships as they see fit, and the Court will not redraw those lines after the fact. Starr could have defined a "claim" as any communication expressing an intent to hold the insured liable for an alleged wrongdoing. However, the policy at issue here does not contain such clarifying language. Starr's policy defines a claim as a demand for relief, and the notice in this case contains no such demand.

Starr argues that the Court should interpret its policy in light of the "known loss" and "fortuity" principles of insurance law. It asserts that, under Tree Top's interpretation, an insured could be notified that a lawsuit would be filed against it, and then secure coverage in advance for that suit, merely because the suit had not actually been filed and served. ECF No. 46. Starr's argument attempts to shoe-horn

the fortuity or "known loss" principle—which has already been fully briefed and argued before the Court—into this contract interpretation dispute. Whether these principles play a role in determining Tree Top's coverage under the policy is a separate question that does not impact this discrete issue of contract interpretation.

## CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED**:

**1.** Tree Top's Motion for Summary Judgment Regarding When the Claim was First Made, **ECF No. 43**, is **GRANTED**.

**2.** Starr's Cross Motion for Summary Judgment Re: Claim, **ECF No. 41**, is **DENIED**.

**IT IS SO ORDERED.** The Clerk's Office is directed to enter this Order and provide copies to all counsel.

**DATED** this 21st day of November 2017.

_____
SALVADOR MENDOZA, JR.
United States District Judge