FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Nov 28, 2017

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| TREE TOP INC. <br><br> Plaintiff, <br><br> v. <br><br> STARR INDEMNITY AND LIABILITY CO., <br><br> Defendant. | No.   1:15-CV-03155-SMJ <br><br> ORDER DENYING THE PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT |

At issue in this insurance coverage dispute is whether Defendant Starr Indemnity & Liability Co. (Starr) has a duty to provide coverage to Plaintiff Tree Top, Inc. (Tree Top) for the costs Tree Top incurred in defending a lawsuit in California state court. The parties have filed cross-motions for summary judgment. Starr moves for judgment declaring that it had no duty to defend Tree Top and requests that the entire suit be dismissed. For its part, Tree Top moves for summary judgment dismissing Starr's known-risk defense. In the alternative, Tree Top opposes Starr's motion for summary judgment and asserts that issues of material fact remain.

For the reasons discussed below, the fortuity or known-risk doctrine applies to this case. The relevant question, therefore, is whether Starr has shown that Tree

ORDER DENYING THE PARTIES'
MOTIONS FOR SUMMARY JUDGMENT **-** 1

Top subjectively knew there was a substantial probability it would incur the defense costs it now seeks to recover at the time it purchased its insurance policy from Starr. Whether Tree Top subjectively knew this at the time is not conclusively resolved by the record before the court. Accordingly, a question of material fact remains and granting either party summary judgment at this time is unwarranted.

## BACKGROUND

### A. Undisputed Facts

Tree Top is a Washington corporation doing business in Yakima, WA. ECF No. 1-2 at 1. Starr is an insurance corporation incorporated in Texas with its principal place of business in New York. ECF No. 1-2 at 1; ECF No. 1 at 4.

Like most businesses, Tree Top engages insurance companies to provide it with insurance coverage. Relevant here, Tree Top was insured by Federal Insurance Company ("Federal") under Directors and Officers Policy No. 8208-6271 from July 1, 2009, through July 1, 2010. ECF No. 33 at 2. Tree Top renewed this policy from July 1, 2010, through July 1, 2011. ECF No. 33 at 2.

On June 14, 2010, Tree Top received a Proposition 65[1] notice ("Notice") from the Environmental Law Foundation ("ELF"). ECF No. 33 at 2. ELF sent the Notice, dated June 9, 2010, to 49 businesses, including Tree Top. ECF No. 33 at 2.

---

[1] Proposition 65 refers to the California state proposition, which became law in 1986, that "prohibits businesses from knowingly exposing individuals to listed substances without providing a clear and reasonable warning." ECF No. 22 at 4.

The Notice claimed the 49 companies, which sell consumer food products, sold apple juice, grape juice, packaged peaches, packaged pears and fruit cocktails containing lead. ECF No. 23-2 at 5. The Notice stated that, pursuant to California Health and Safety Code § 25249.7(d), ELF intended to file suit against the 49 companies, including Tree Top, 60 days from the date it sent the Prop 65 notice "to correct the violation occasioned by the failure to warn all consumers of the exposure to lead." *Id.* When Tree Top received the Notice, Federal insured Tree Top. Tree Top, however, did not alert Federal of the Notice or otherwise seek coverage from Federal. ECF No. 33 at 3.

On June 29, 2010, less than a month after receiving the Notice, Tree Top entered into a Joint Defense Agreement ("JDA") with 14 other companies who also received the Notice. ECF No. 33 at 3; ECF No. 23-3 at 2–7. That same day, Tree Top executed a legal services engagement letter with Morrison & Foerster, the law firm representing the Joint Defense Group ("JDG"). ECF No. 23-5 at TREE TOP 2–5. Morrison & Foerster was retained to assist the JDG members with avoiding lawsuits following the Notice and defending the JDG in litigation, if any materialized. ECF No. 23-5 at 2. In addition, Tree Top's present counsel, Halverson

Northwest,[2] as Tree Top's general counsel, provided services and advice with respect to the Proposition 65 issue. ECF No. 33 at 4.

Subsequently, Tree Top executed an addendum to the JDA on February 6, 2011, at which point the JDG contained 19 members. ECF No. 23-4 at 2–3. Nancy Buck, Tree Top's Vice President of Legal Services, executed the initial JDA, Addendum, and engagement letter with Morrison & Foerster. ECF No. 23-3 at TREE TOP 001001; ECF No. 23-4 at 7; ECF No. 23-5 at 5.

On May 5 and 6, 2011, Tree Top's CEO and CFO signed a formal application for insurance from Federal. ECF No. 23-9 at 9. Tree Top did not disclose the Notice on the application. ECF No. 33 at 5.

About a month later, on June 6, 2011, Tree Top's insurance broker, Marsh/FINPRO sent an email to Starr inquiring as to whether Starr wanted to submit a quote for Tree Top's business. ECF No. 33 at 5. Tree Top did not disclose the Notice to Starr nor its involvement in the JDG. ECF No. 33 at 5. Starr issued Policy No. SISIFNL20074611 ("Policy") to Tree Top effective July 1, 2011, through July 1, 2012. ECF No. 23-10 at 2–6. The Policy's period ran from July 1, 2011, through July 1, 2012. *Id.* at 2. Prior to June 2011, Tree Top incurred

---

[2] At the time Halverson Northwest was known as Velikanje Halverson. ECF No. 22 at 9.

approximately $64,000 in legal fees related to the Proposition 65 issue. ECF No. 33 at 4–5.

A few months later, on September 28, 2011, ELF filed suit against 28 of the 49 defendants named in the Notice, including Tree Top, in the Superior Court of California for the County of Alameda. ECF No. 23-11. ELF filed its suit 476 days after the date reflected on the Notice. ECF No. 23-2 at 5. Tree Top did not notify Starr of ELF's lawsuit until May 4, 2012. ECF No. 33 at 6. The case went to trial, and Tree Top and its codefendants emerged victorious after they were found to not have violated Proposition 65. ECF No. 33 at 7.

In May 2012, via written correspondence, Starr's claim servicer acknowledged receipt of Tree Top's claim for coverage of its litigation costs for the EFL suit under the Policy. ECF No. 23-13 at 2. In that same letter Starr's claim servicer, LVL Claims Services ("LVL"), informed Tree Top that its claim was denied pursuant to the terms of the Directors and Officers Section of the Policy. ECF No. 23-13 at 2–4. In short, LVL explained that it denied coverage because, in its view, the claim at issue was made on June 9, 2010, before the start of the Policy coverage period. *Id.* at 3. LVL went on to cite two additional Policy sections that "might further limit or preclude coverage" dealing with wrongful acts and pollution. *Id.* at 4.

**B.     Procedural Background**

On May 11, 2015, Tree Top sued Starr in Yakima County Superior Court seeking reimbursement of defense fees incurred defending the ELF lawsuit. ECF No. 1-2. Starr removed the case to this Court on September 1, 2015. ECF No. 1.

On July 12, 2017, the Court heard oral argument on the parties' cross-motions for summary judgment. ECF No. 36. At the hearing, Tree Top raised a new argument regarding Starr's "fortuity" or "known-risk" defense. Tree Top argued that, if the Court applied the defense to a claims-made policy, it would break new ground. Accordingly, the Court held the motions in abeyance and ordered the parties to address whether applying the known-risk defense would in fact extend it to a new category of insurance policies to which Washington courts have not previously applied the defense, and whether the Court should certify the issue to the Washington State Supreme Court. ECF No. 37. The parties submitted supplemental briefing. ECF Nos. 38–40.

In the interim, the parties submitted cross-motions for partial summary judgment on the issue of whether ELF's 2010 demand letter was a "claim" under the terms of Starr's policy. The Court granted summary judgment in Tree Top's favor, holding that the notice was not a "claim" under the policy.

## LEGAL STANDARD

Summary judgment is appropriate if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Once a party has moved for summary judgment, the opposing party must point to specific facts establishing that there is a genuine dispute for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). If the nonmoving party fails to make such a showing for any of the elements essential to its case for which it bears the burden of proof, the trial court should grant the summary judgment motion. *Id.* at 322. "When the moving party has carried its burden under Rule [56(a)], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (internal citation omitted). When considering a motion for summary judgment, the Court does not weigh the evidence or assess credibility; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

**DISCUSSION**

It is well settled that Washington courts recognize the "fortuity" or "known-risk" doctrine as a defense to providing coverage in the insurance context. *See Alcoa v. Aetna Cas. & Sur. Co.*, 998 P.2d 856 (Wash. 2000); *Hillhaven Props. Ltd. v. Sellen Constr. Co.*, 948 P.2d 796 (Wash. 1997); *Pub. Util. Dist. No. 1 of Klickitat Cty. v. Int'l Ins. Co.*, 881 P.2d 1020 (Wash. 1994) (hereinafter *PUD 1*). The known-risk doctrine is a judicially-created defense "premised on the principle that an insured cannot collect on an insurance claim for a loss that the insured subjectively knew would occur at the time the insurance was purchased." *PUD 1*, 881 P.2d at 1030. Courts applying this doctrine "must determine whether a particular occurrence was expected by the insured before the insurance coverage was obtained." *Id.* This is a factual inquiry. *Id.* Although the Court concludes that the known-risk doctrine applies to Tree Top's claims-made policy with Starr, a material question of fact remains as to whether Tree Top subjectively knew it would incur defense costs associated with ELF's suit when it applied for the claims-made policy with Starr. Accordingly, summary judgment is not appropriate for either party.

**A.   The known-risk doctrine applies to claims-made policies.**

At the July 12, 2017 hearing on the parties' cross-motions for summary judgment, Tree Top argued that applying the known-risk doctrine in this case would extend the doctrine's application to an entirely new class of policies—claims-made

ORDER DENYING THE PARTIES'
MOTIONS FOR SUMMARY JUDGMENT - 8

policies—to which the doctrine has never before applied. Tree Top argues that this Court should refrain from extending the doctrine to claims-made policies or, alternatively, that the Court should certify to the Washington State Supreme Court the question of whether the known-risk doctrine applies to claims-made policies.

This Court applies Washington State substantive law in cases in which the Court has diversity jurisdiction under 28 U.S.C. § 1441. This Court may certify questions to the Washington State Supreme Court if the Washington law is unsettled. *See Cornhusker Cas. Ins. Co. v. Kachman*, 514 F.3d 982, 988 (9th Cir. 2008); Wash Rev. Code § 2.60.030(1) and Wash. R. App. P. 16.16 (specifying the procedure for certifying questions of Washington State law to the Washington State Supreme Court). However, the Ninth Circuit has stated that "[t]he certification procedure is reserved for state law questions that present significant issues, including those with important public policy ramifications, and that have not yet been resolved by the state courts." *Kremen v. Cohen*, 325 F.3d 1035, 1037 (9th Cir. 2003). It is within this Court's sound discretion whether to certify a question to the state supreme court. *Louie v. United States*, 776 F.2d 819, 824 (9th Cir. 1985) (citing *Lehman Bros. v. Schein*, 416 U.S. 386, 391 (1974)).

Here, the Court declines to certify the question to the Washington State Supreme Court. Although Washington courts have not yet addressed this precise application of the known-risk doctrine, there is no shortage of state court decisions

addressing the doctrine. *See, e.g.*, *Alcoa v. Aetna Cas. & Sur. Co.,* 998 P.2d 856 (Wash. 2000); *Hillhaven Props. Ltd. v. Sellen Constr. Co.*, 948 P.2d 796 (Wash. 1997); *PUD 1*, 881 P.2d 1020 (Wash. 1994). The Court finds that these decisions provide sufficient guidance so that the Court may act consistently with Washington law in applying the known-risk doctrine.

Tree Top argues that the known-risk doctrine should not apply to claims-made policies because claims-made policies contain provisions expressly providing for the insured's knowledge. Though there is some appeal to Tree Top's argument based on general principles of contract interpretation, it is ultimately unavailing. Nothing in Washington case law indicates or implies that the known-risk doctrine applies only to certain types of insurance policies. To the contrary, Washington courts do not distinguish between policy types when applying the known-risk doctrine. *See, e.g.*, *Overton v. Consol. Ins. Co.*, 38 P.3d 322 (Wash. 2002) (applying known-risk doctrine to general liability policy); *Hillhaven Props. Ltd. v. Sellen Constr. Co.*, 948 P.2d 796 (Wash. 1997) (holding that the known-risk doctrine applies in the context of first-party property insurance claims). This cursory treatment of the underlying contract makes sense in light of the fact that the known-risk doctrine is rooted in public policy, not contract law. *See Churchill v. Factory Mut. Ins.*, 234 F. Supp. 2d 1182, 1187–88 (W.D. Wash. 2002) (citing multiple authorities—including federal courts, the Washington State Supreme Court, and a

leading treatise on insurance law—for the proposition that the fortuity requirement exists as a matter of public policy to protect against insurance fraud). Accordingly, substantive differences in underlying insurance contracts are relevant—if at all—only to the extent they bear on the policy objectives animating the doctrine.

The Washington State Supreme Court's decision in *Hillhaven Properties Ltd. v. Sallen Construction Co.*, is instructive. 948 P.2d 796. In that case, the Court considered whether to apply the known-risk doctrine to first-party insurance claims. *Id.* The insured argued that the known-risk doctrine should not apply because Washington courts had addressed the principle only in the context of third-party claims. *Id.* at 800. The Court rejected this argument, concluding that the known-risk doctrine applied equally to first- and third-party insurance claims. *Id.* at 803. The Court explained that the differences between first- and third-party insurance claims did not affect whether the doctrine applied, but only the extent of knowledge required to trigger the defense. *Id.* at 803–04.

The *Hillhaven* Court's decision bolsters Starr's argument that the known-risk doctrine applies to all insurance disputes, regardless of the underlying contract. The purpose of the known-risk doctrine is to prevent the insured from wrongfully passing liability for a known loss to the insurer. This principle applies with equal force whether that loss is occasioned by a past occurrence or by a claim levied against the insured. Accordingly, Tree Top will be unable to recover under the

ORDER DENYING THE PARTIES'
MOTIONS FOR SUMMARY JUDGMENT - 11

claims-made policy if Starr can show Tree Top knew there was a substantial probability that the disputed loss would occur at the time insurance was purchased.

**B.    Summary judgment is not appropriate on Starr's known-risk defense because an issue of material fact regarding Tree Top's subjective knowledge remains.**

When applying the known-risk doctrine, the relevant standard is whether an insurer has shown that an insured subjectively knew there was a substantial probability the contested loss would occur at the time insurance was purchased. *PUD 1*, 881 P.2d at 1030. This is a factual inquiry. *Id.* It is undisputed that Plaintiff "tendered [the ELF lawsuit to Starr] to provide a defense to the lawsuit as well as to provide indemnity for any judgment that could ultimately be entered." ECF No. 1-2 at 2. In other words, the loss Tree Top seeks to recover through the instant action is the only expense it incurred in defending itself from the ELF lawsuit, since there was no judgment against Tree Top from the suit. Therefore, the relevant question is, based on the undisputed facts, did Tree Top subjectively know in July 2011, when it purchased the Policy from Starr, that there was a substantial probability it would incur the defense costs it now seeks to recover?

In resisting Starr's summary judgment motion, Tree Top submits Nancy Buck's declaration. Buck was at all relevant times Tree Top's Vice President of Legal Services. ECF No. 26 at 2. In it, she repeatedly states that she did not believe that Tree Top would be subjected to any claims or lawsuits following the Notice

since she believed that Tree Top operated within all legal and regulatory requirements. ECF No. 26 at 2–3. She asserts that she conducted her own investigation after receiving the Notice, which revealed that, in her opinion, "Tree Top was not in violation of Prop 65, and was in compliance with all applicable laws and regulations just as I had originally thought when the notice was first brought to my attention." ECF No. 26 at 3. She further asserts that it was her sincerely held belief that no lawsuit would be filed since no one could prove Tree Top was in violation of Proposition 65 since, in her estimation, it was not. ECF No. 26 at 3–4. She "held this belief—that Tree Top's grape juice product was not in violation of Prop 65—based in part upon the 'Exclusion Summary' section of the Prop 65 Notice, of which [she] believed Tree Top's grape juice product fit into." ECF No. 26 at 3–4. Importantly, Buck states that she did not disclose the Notice to Starr because she did not believe it was a "claim" against Tree Top. ECF No. 26 at 7. Moreover, Buck states that Tree Top disclosed other "claims" in the application that it believed met the definition. ECF No. 26 at 7. Finally, Buck states that "it was my subjective belief that at the time of the application and issuance of the Starr Policy, the Prop 65 Notice did not constitute a 'claim' nor would there be future litigation as we were not in violation of Proposition 65. *It had been almost a year since the*

*Prop 65 notice and nothing had been filed nor threatened.*" ECF No. 26 at 8 (emphasis added).[3]

Starr argues that this declaration is self-serving and cannot defeat summary judgment. ECF No. 29 at 6–7. Citing *Barrett v. California*, 147 F. App'x 679, 681 (9th Cir. 2005), Starr correctly points out that uncorroborated and self-serving declarations cannot, on their own, create genuine issues of material fact. Indeed, many of Buck's statements appear self-serving, yet not all of them are uncorroborated. For example, more than a year passed from the time Tree Top received the Notice to when the lawsuit was filed.

It could be that in that time, based on the information Morrison & Foerster provided or other information, Tree Top did not believe that ELF would actually file a lawsuit on the Proposition 65 issue. On the other hand, Tree Top joining the JDG in and of itself could be seen as an indication that it believed litigation was likely. These are factual questions to be answered by the trier or fact. *Hillhaven*, 948 P.2d at 803 ("Generally courts have held that whether an insured had the

---

[3] Buck also states that "it was her understanding that some companies who receive [Proposition 65 notices] simply ignored them; as they are a fairly common occurrence for companies doing business in California. In other words, a lot of the time, these Prop 65 Notices are sent as a sort-or 'fishing expedition' and turn out to be backed up by little to no substance." ECF No. 26 at 3. However, there is nothing to corroborate these statements so they are insufficient to establish an uncontroverted fact for the purposes of this motion.

ORDER DENYING THE PARTIES'
MOTIONS FOR SUMMARY JUDGMENT **-** 14

requisite knowledge of a preexisting condition is a question of fact for the fact finder.") Accordingly, summary judgment is not proper on Starr's known-risk defense.

## CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED**:

**1.** Starr's Motion for Summary Judgment, **ECF No. 22**, is **DENIED**.

**2.** Tree Top's Cross Motion for Summary Judgment, **ECF No. 25**, is **DENIED**.

**IT IS SO ORDERED.** The Clerk's Office is directed to enter this Order and provide copies to all counsel.

**DATED** this 27th day of November 2017.

_____
SALVADOR MENDOZA, JR.
United States District Judge